[Cite as *State v. Pruitt*, 2012-Ohio-3986.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | |
| SHUN BREE PRUITT | : | Case Nos. 11CA96 & 11CA97 |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:                  Appeal from the Court of Common
                                         Pleas, Case Nos. 2011CR168 and
                                         2011CR371


JUDGMENT:                                Affirmed


DATE OF JUDGMENT:                        August 31, 2012


APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

JOHN C. NEIFT                            RANDALL E. FRY
38 South Park Street                     10 West Newlon Place
Mansfield, OH  44902                     Mansfield, OH  44902

*Farmer, J.*

{¶1}   On March 23, 2011, the Richland County Grand Jury indicted appellant, Shun Bree Pruitt, on seventeen counts of aiding and abetting: three counts of aggravated murder in violation of R.C. 2903.01, two counts of murder in violation of R.C. 2903.02, two counts of aggravated burglary in violation of R.C. 2911.11, two counts of aggravated robbery in violation of R.C. 2911.01, three counts of burglary in violation of R.C. 2911.12, one count of robbery in violation of R.C. 2911.02, two counts of felonious assault in violation of R.C. 2903.11, one count of tampering with evidence in violation of R.C. 2921.12, and one count of possession of criminal tools in violation of R.C. 2923.24 (Case No. 2011CR168).   Fifteen of the charges arose from incidents which occurred on November 7, 2010 and February 13, 2011, involving the home and death of Jason Kirst.  The remaining two counts (burglary) involved the home of Cindy Wolfe which occurred on January 29, 2011 and between February 12 and 15, 2011.

{¶2}   On June 10, 2011, the Richland County Grand Jury indicted appellant on one count of burglary in violation of R.C. 2911.12 (Case No. 2011CR371).  Said charge arose from an incident which occurred between January 24 and 27, 2011, involving the home of Cindy Wolfe.

{¶3}   On June 15, 2011, the state filed a motion to consolidate the cases.  A hearing was held on June 27, 2011.  By judgment entries filed June 29, and July 8, 2011, the trial court granted the motion.

{¶4}   A jury trial commenced on September 1, 2011.  The counts involving the November 7, 2010 dates were dismissed: one burglary count and one robbery count, both involving the home of Mr. Kirst.  The jury found appellant guilty of all other charges

except for one of the murder counts. The murder count was subsequently dismissed on September 15, 2011, as the jury was unable to reach a verdict on said count. By sentencing entries filed September 12 and 15, 2011, the trial court sentenced appellant to an aggregate term of life in prison without parole.

{¶5} On October 13, 2011, appellant filed an appeal in Case No. 2011CR168 (Case No. 2011CA0096) and a separate appeal in Case No. 2011CR371 (Case No. 2011CA0097). On March 13, 2012, this court consolidated the two appeals.

{¶6} This matter is now before this court for consideration. Assignment of error is as follows:

I

{¶7} "THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL AS A RESULT OF THE TRIAL COURT'S REFUSAL TO GRANT THE DEFENDANT-APPELLANT'S OBJECTION TO THE PLAINTIFF-APPELLEE'S MOTION TO CONSOLIDATE."

I

{¶8} Appellant claims the trial court erred in granting the state's motion to consolidate the cases for trial as the consolidation denied him a fair trial. We disagree.

{¶9} Pursuant to Crim.R. 13, "[t]he court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information."

{¶10} Crim.R. 8(A) governs joinder of offenses and states the following:

{¶11} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged,

whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶12} Crim.R. 14 governs relief from prejudicial joinder and states the following:

{¶13} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."

{¶14} The standard of review on this issue is set forth in *State v. Torres* (1981), 66 Ohio St.2d 340, syllabus:

{¶15} "A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial."

{¶16} In its June 15, 2011 motion to consolidate, the state asserted "both cases are connected as part of a criminal course of conduct." In response, appellant argued

the crimes charged were not part of a criminal course of conduct, as the two cases involved different victims, dates, and evidence. Appellant argued "to try the two separate cases together would be too cumbersome for the jury to evaluate and thus be highly prejudicial to the defense." Objection to Motion to Consolidate filed June 27, 2011. After holding a hearing, the trial court found "the offenses in both cases are connected as part of a criminal course of conduct" and consolidated the cases. See, Judgment Entry filed June 29, 2011. In a second judgment entry filed July 8, 2011, again granting the motion to consolidate, the trial court found "that evidence presented in each case would be admissible in the other even if the trials were separated. The Court further finds that evidence related to these two cases is simple and direct such that the jury will not become confused by presenting such evidence at one trial."

{¶17} A review of the indictments, the bill of particulars, and the jury verdicts in each case establishes appellant was charged with and convicted of the following offenses:

{¶18} **Case No. 2011CR168 (all aiding and abetting):**

| {¶19} Count 1: | Aggravated Murder (Prior Calculation) of Jason Kirst, February 13, 2011 | No Verdict Dismissed |
|---|---|---|
| {¶20} Count 2: | Aggravated Murder (During a Robbery) of Jason Kirst, February 13, 2011 | Guilty |
| {¶21} Count 3: | Aggravated Murder (During a Burglary) of Jason Kirst, February 13, 2011 | Guilty |
| {¶22} Count 4: | Murder of Jason Kirst February 13, 2011 | Guilty |
| {¶23} Count 5: | Murder (During a Felonious Assault) of Jason Kirst, February 13, 2011 | Guilty |

{¶24} Count 6: Aggravated Burglary (Physical Harm)      Guilty
of Jason Kirst, February 13, 2011

{¶25} Count 7: Aggravated Burglary (Deadly Weapon)      Guilty
of Jason Kirst, February 13, 2011

{¶26} Count 8: Aggravated Robbery (Deadly Weapon)      Guilty
of Jason Kirst, February 13, 2011

{¶27} Count 9: Aggravated Robbery (Physical Harm)      Guilty
of Jason Kirst, February 13, 2011

{¶28} Count 10: Felonious Assault (Serious Physical Harm)      Guilty
of Jason Kirst, February 13, 2011

{¶29} Count 11: Felonious Assault (Deadly Weapon)      Guilty
of Jason Kirst, February 13, 2011

{¶30} Count 12: Tampering with Evidence      Guilty
on February 13-15, 2011

{¶31} Count 13: Possession of Criminal Tools      Guilty
on February 12-15, 2011

{¶32} Count 14: Robbery of Jason Kirst      Dismissed
November 7, 2010      Prior to Trial

{¶33} Count 15: Burglary of Jason Kirst      Dismissed
November 7, 2010      Prior to Trial

{¶34} Count 16: Burglary of Cindy Wolfe      Guilty
January 29, 2011

{¶35} Count 17: Burglary of Cindy Wolfe      Guilty
February 12-15, 2011

{¶36} **Case No. 2011CR371:**

{¶37} Count 1: Burglary of Cindy Wolfe      Guilty
January 24-27, 2011

{¶38} In support of his arguments, appellant cites the case of *State v. Clements* (1994), 98 Ohio App.3d 797. In *Clements,* the defendant was charged with aggravated robbery and burglary. The evidence regarding the burglary included the defendant's act

of kicking down the door to his girlfriend's residence. Our brethren from the Second District found the specific evidence of the defendant's violent nature in kicking down the door created an image of "one who was irresponsibly disposed" to violence and "such evidence would be difficult to isolate and shake while deciding the more serious charge of aggravated robbery." *Clements,* at 799.

{¶39} The arguments in this assignment require a review of the offenses and whether they were "part of a course of criminal conduct," and whether appellant met his "burden of affirmatively showing that his rights were prejudiced."

{¶40} The state's position was best summarized during the consolidation hearing as follows:

{¶41} "So the State's position would be that the initial robbery of Mr. Kirst was part of a criminal course of conduct, and from that robbery we get the ultimate murder because he had robbed him one time, saw this property, goes back, and they had been using this Cindy Wolfe's home as a staging area. They returned to that residence after the murder, because they had nowhere else to stay. Basically Eboney and Shun Bree were homeless. They were staying at Cindy Wolfe's home without her permission, and even though she was living somewhere else she would call the police after they broke in, she would try to have the residence locked back up, they would go back and break in again because they had no other place to go." June 27, 2011 T. at 4.

{¶42} Defense counsel explained appellant's position as follows:

{¶43} "Thank you, Your Honor. If it please the Court it would be our contention that they are not connected because you do have, as you've heard, different players involved in the entire situation.

{¶44} "In addition to that, what the prosecutor did not tell you is that there was an extended period of time in which all of the people mentioned, Shun Bree, Eboney, and Justin had permission to be in this residence owned by Cindy Wolfe.

{¶45} "***

{¶46} "I don't think the evidence is going to show that there was any type of common plan or scheme or evidence to support any type of conspiracy along those lines that involve those properties. In fact, I think the burglary charge as it relates to Cindy Wolfe in Shun Bree's original indictment should be separated out, and those two cases could be tried separately, apart from the murder charges. So we would ask the Court to separate those out." Id. at 6-7.

{¶47} During the voir dire process, the trial court explained the allegations contained in the two indictments as follows:

{¶48} "The prosecutor alleges, and, remember, all this remains to be proved by evidence, but these are the allegations of the prosecutor, that between January 24th and January 27th of this year, Shun Bree Pruitt, also known as Shun Bree Ginn, broke into a house at 20 Antibus Place here in Mansfield, Ohio, the home of Cindy Wolfe, and caused damage to the residence and stole food items from her. That Mr. Pruitt did not have her permission - - at the time Mr. Pruitt did not have permission to be inside her residence. At that time the owner of that house, Cindy Wolfe, was in the process of moving from 20 Antibus Place, where the break-in was, to a new residence.

{¶49} "The State further alleges that on January 29th, which would be after that period of January 24th to the 27th, that Shun Bree Pruitt and Eboney Ward broke into Cindy Wolfe's residence located at 20 Antibus Place in Mansfield, Ohio, and stole some

of her personal property including her jewelry and DVD movies. Cindy Wolfe caught them, caught Mr. Pruitt and Ms. Ward, in the act of stealing her property.

{¶50} "The State further alleges that in the evening hours of February 13th of this year, Shun Bree Pruitt and Eboney Ward went to 91 Greenwood Avenue here in Mansfield, which is the home of Jason Kirst, to rob him of his big screen TV. Once inside the residence Shun Bree Pruitt and Eboney Ward, while aiding and abetting each other, used a billy club to knock Jason Kirst unconscious, and used two different knives to stab him to death.

{¶51} "After stabbing Jason Kirst to death, Mr. Pruitt and Ms. Ward stole the big screen TV and other property belonging to Jason Kirst, and then took the items back to 20 Antibus Place, the now vacant residence of Cindy Wolfe, in order to hide the stolen property. Mr. Pruitt and Ms. Ward did not have Ms. Wolfe's permission to enter or hide the stolen property from the Jason Kirst residence inside of her residence.

{¶52} "The State further alleges Shun Bree Pruitt and Eboney Ward then hid two pieces of the billy club and the two knives along with the rubber gloves and the shoes they wore while committing the murder of Jason Kirst above a ceiling tile inside the residence of 20 Antibus Place in Mansfield, in hopes that those items would not be found.

{¶53} "Once again, Ms. Wolfe did not give permission to Mr. Pruitt or Ms. Ward to enter her residence or to hide the evidence from the murder in the ceiling of her residence at 20 Antibus Place." T. at 21-23.

{¶54} The theory of the state's case was that appellant and his girlfriend, Eboney Ward, were transients and broke into Ms. Wolfe's residence for food on January 27th

and again on January 29, 2011. T. at 178-180. During the latter date, Ms. Wolfe arrived at the residence and confronted the pair while they were stealing her property. T. at 180. A large billy club came up missing which was eventually used in the robbery/murder of Mr. Kirst. T. at 180, 183-184. Ms. Ward gained access to Mr. Kirst's residence by claiming she needed to make a telephone call. T. at 181-182. Once inside, the plan was for Ms. Ward to unlock the back door so appellant could enter and steal the big screen TV. T. at 182. The plan went astray and through a bathroom window, Ms. Ward warned appellant that Mr. Kirst had a gun and " 'we can't do this.' " T. at 183. At the time, Ms. Ward was not wearing her shirt or bra. Id. Appellant refused to believe Ms. Ward, went to the front of the house, banged on the front door in a rage, and accused Mr. Kirst of fooling around with his girlfriend. Id. Once inside, appellant chased Mr. Kirst and eventually struck him with the billy club until Mr. Kirst was unconscious, breaking the billy club into three pieces. T. at 183-184. Ms. Ward took a little steak knife and stabbed Mr. Kirst in the throat, snapping the knife in half. T. at 184. Appellant retrieved a bigger knife from the kitchen and repeatedly stabbed Mr. Kirst. T. at 184-185. Mr. Kirst suffered over fifty stab wounds. T. at 185. The pair stole the big screen TV and other items and secured them in Ms. Wolfe's residence after breaking into her garage. T. at 185-186. The pair also hid the knives, billy club, bloody gloves, and their bloody tennis shoes in a ceiling tile in Ms. Wolfe's residence. T. at 186-187.

{¶55} In defense, appellant claimed the plan was to rob Mr. Kirst, not kill him, that he did strike Mr. Kirst with the billy club, and then Ms. Ward "went crazy" and stabbed Mr. Kirst repeatedly. T. at 188. During his taped statement, appellant admitted to entering the Wolfe residence at times as he had no other place to stay and "it was

somewhere warm," and that's where he and Ms. Ward hid various items following the incident with Mr. Kirst. State's Exhibit 26b.

{¶56} From a review of the facts, we find the burglaries of the Wolfe residence would have been presented even if the motion to consolidate had been denied. From the burglaries of the Wolfe residence of food and the billy club to the robbery/murder of Mr. Kirst, there was a logical continuous course of criminal conduct that did not unduly prejudice appellant.

{¶57} The trial court specifically cautioned the jury that each charge "constitutes a separate and distant matter. You must consider each charge and the evidence applicable to it separately, and you must state your findings as to each charge uninfluenced by your verdict as to the other charges." T. at 1088. Further, as demonstrated in defense counsel's opening statement and closing argument, the strategy was not to deny the burglaries and robberies, but to place the blame for Mr. Kirst's murder on Ms. Ward. T. at 188-189, 1117-1118, 1125-1126. Appellant's admission to the police was consistent with this theory. T. at 847.

{¶58} The entire trial on the two indictments centered upon Mr. Kirst's murder, the events leading up to it, and the disposal of the evidence. Upon review, we conclude the trial court did not abuse its discretion in consolidating the two cases, and we find no undue prejudice to appellant given the trial strategies of the state and appellant.

{¶59} The sole assignment of error is denied.

{¶60} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Edwards, J. concur.


s/ Sheila G. Farmer_____

s/ William B. Hoffman_____

s/ Julie A. Edwards_____

JUDGES


SGF/sg 720IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT


STATE OF OHIO                           :
                                        :
        Plaintiff-Appellee              :
                                        :

-vs- : JUDGMENT ENTRY
:
SHUN BREE PRUITT :
:
Defendant-Appellant : CASE NOS. 11CA96
:

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed. Costs to appellant.

s/ Sheila G. Farmer_____

s/ William B. Hoffman_____

s/ Julie A. Edwards_____

JUDGES

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO      :
          :
 Plaintiff-Appellee   :
          :
-vs-        :    JUDGMENT ENTRY
          :
SHUN BREE PRUITT   :
          :
 Defendant-Appellant  :    CASE NOS. 11CA97
          :

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed. Costs to appellant.

s/ Sheila G. Farmer_____

s/ William B. Hoffman_____

s/ Julie A. Edwards_____

    JUDGES